## Case No. 4,378.

### The ELLEN S. TERRY.

[7 Ben. 401.][1]

District Court, S. D. New York. Aug. 1874.

[1] [Reported by Robert D. Benedict, Esq., and B. Lincoln Benedict, Esq., and here reprinted by permission.]

John P. Crosby, for libellant.
Erastus C. Benedict, for claimants.

BLATCHFORD, District Judge. On the 27th of December, 1865, the schooner Vesta was aground in the channel leading in from Hatteras inlet. The channel was only 100 or 150 feet wide. The place where the Vesta was lying was at a turn in the channel. The general direction of the channel was north and south, but where the Vesta was it ran more east and west. The Vesta was lying rather across the channel, occupying a considerable portion of its width. The steamer Ellen S. Terry came in from sea, under the charge of an experienced pilot. He had sounded, the day before, to the westward of the bows of the Vesta, which was lying with her bows rather to the westward, and had found, as he believed, sufficient depth of water to enable a vessel of the draught of the Terry to pass safely the bows of the Vesta. The Terry proceeded on slowly, and attempted to go around the bows of the Vesta, but it was found she was not minding her helm, because her keel was scraping the ground. Her engine was then reversed, and the effect of the wind and the tide, and other concurring circumstances, was such that her stem struck the port side of the Vesta, and crushed it in, and the Vesta sank. This suit is brought to recover for the damages caused to the Vesta and her cargo.

The Terry, in her answer, sets up, that the

collision and the damages were caused by negligence and bad management on the part of the Vesta, "in endeavoring, with a vessel of her draft, to pass the Swash with such water"—"in getting aground in the main channel and across the same"—"in not making any effort to procure assistance to lighten her, or to raise or lift her, to remove a portion of her cargo, or to tow her off"—"in not getting out fenders"—"in not making any efforts to stop the leak and save the cargo" —and in "destroying and wasting portions of said cargo." The answer also avers, that, as to the Terry, the collision was, under the circumstances, unavoidable, and the accident inevitable.

This collision occurred in the day time, in clear weather. The Vesta was aground, and it was the duty of the Terry to avoid her. The pilot of the Terry supposed there was water enough for the Terry to pass. He was mistaken in his judgment. The wind and the tide, after the Terry touched bottom, carried her against the Vesta. Because the Terry, at the speed she had, and in the predicament she was in, could not resist, although she backed strongly, the forces which carried her against the Vesta, it is contended, that she was inevitably borne against the Vesta by irresistible force. This may be true, but this does not make the collision an inevitable accident, in the sense of the law which excuses an accident which is inevitable. The Terry plainly saw the Vesta, and could easily have refrained from attempting at all to pass her, or could have attempted to do so at a speed so slow as would have enabled her, by backing, to stop herself before hitting the Vesta. There was nothing unsteady in the wind or the tide. Their forces were seen and known and capable of being measured in advance. The Vesta had, to the knowledge of the pilot of the Terry, been aground for two days in the same place, and the actual depth of water at the place where the Terry attempted to pass, at the time of her attempt, could have been ascertained by other means than by measuring it by the passage of the Terry herself.

Even if the Vesta might have avoided grounding when and where she did, and even if she might have sooner relieved herself, by lightening her cargo, or being towed away, this did not justify the Terry in running into her, or make the Vesta responsible, in fault, for the actual collision of the Terry with her. The duty of the Terry towards the Vesta arose out of the fact that the Vesta was, at the time, aground and helpless, and was not modified or qualified, in any degree, by any consideration as to how the Vesta came to be there or not to have gone from there.

As to the failure of the Vesta to use a fender to ward off the blow, there is nothing to show that she had such warning that she would probably be hit by the Terry, as to make the failure to use a fender a fault contributing to the damage. The Terry took a direction to clear the Vesta, and then suddenly came upon her.

So, as to the alleged failure of those on the Vesta to take measures to stop the leak and save the cargo by careening the Vesta to starboard or stopping up the wound, leniency of judgment is always extended to the movements of a vessel in the situation of the Vesta, about to be struck by a steamer, or which has been struck and crushed in. Fright and alarm ensue, presence of mind disappears, attention to the safety of life and immediate personal property becomes, naturally, the first consideration on the part of the crew, and a failure to exercise calm judgment, and to do those things which retrospection from a place of safety may suggest as obvious, is regarded as attributable to the fault of the faulty vessel, and is not imputed as contributory negligence to the other vessel. I see nothing in the evidence in this case, to make this general rule inapplicable here.

If any part of the cargo was destroyed or wasted, after the collision, by the crew of the Vesta, its value must be excluded from the recovery.

It was urged, in argument, on the evidence, that there was a custom, at the place of this collision, for a vessel injured while aground, by another vessel, in the attempt of the latter, carefully made, to pass by her, to bear her own loss. No such defence is set up in the answer. The evidence does not show any such custom in regard to a sailing vessel run into by a steamer. Nor is the question one of custom or usage, which can vary an otherwise existing liability. Any vessel which has a right of action may waive it. The fact that any number of vessels so waive it for themselves, creates nothing like a custom or usage, binding another vessel to make such waiver.

There must be a decree for the libellant, with costs, with a reference to ascertain the damages.